IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SHELL OIL PRODUCTS COMPANY LLC** | § | |
| **And MOTIVA ENTERPRISES, LLC,** | § | |
| **Plaintiffs,** | § | **Civil Action No. 4:08-cv-01309** |
| | § | |
| **vs.** | § | |
| | § | |
| | § | |
| **CLASSIC INDUSTRIES, LP, CLASSIC** | § | |
| **ARCHITECTURAL PRODUCTS, LP, et al.,** | § | |
| **Defendants.** | § | |

DEFENDANTS' OBJECTIONS TO
MEMORANDUM AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE AND BRIEF IN SUPPORT

JEFFREY S. LOWENSTEIN
State Bar No. 24007574
Southern District No. 566897
KAREN L. HART
State Bar No. 24032401
Southern District No. 35228
NEAL J. SUIT
State Bar No. 24041988
Southern District No. 619893

**BELL NUNNALLY & MARTIN LLP**
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204
(214) 740-1400 – Telephone
(214) 740-1499 – Facsimile

**ATTORNEYS FOR DEFENDANTS**

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................................ II

INTRODUCTION ........................................................................................................................... 1

STANDARD OF REVIEW ............................................................................................................. 6

OBJECTIONS................................................................................................................................... 6

      12(B)(1) RECOMMENDATIONS ................................................................................... 6
      MOTION TO COMPEL ARBITRATION OBJECTIONS.............................................. 19

CONCLUSION............................................................................................................................... 25

CERTIFICATE OF SERVICE ..................................................................................................... 27

# TABLE OF AUTHORITIES

## FEDERAL CASES

**PAGE**

*Astec America, Inc. v. Power-One, Inc.*,
    2008 WL. 1734833 (slip copy) (E.D. Tex. 2008)................................................................17

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
    495 F.3d 1344 (Fed. Cir. 2007)..............................................................1, 5, 11, 12, 13, 14

*Brooks v. Snow*,
    313 F. Supp. 2d 654 (S.D. Tex. 2004) ...........................................................................7, 9

*Cat Tech LLC v. Tubemaster, Inc.*,
    ___F.3d__, 2008 WL. 2188049 (Fed. Cir. 2008) ....................................................1, 9, 11

*Hyrdril Co. v. Grant Prideco, L.P.*,
    Civil Action No. H-05-0337, 2007 WL. 1791663 (S.D. Tex. June 19, 2007)..................25

*Indium Corp. of America v. Semi-Alloys, Inc.*,
    781 F.2d 879 (Fed. Cir. 1985).......................................................................................3, 16

*Lahr v. Fulbright & Jaworski, L.L.P.*,
    164 F.R.D. 204 (N.D. Tex. 1996) .......................................................................................6

*MedImmune v. Genetech*,
    127 S. Ct. 764 (2007)...........................................................................................10, 13, 15

*Moore v. Willis Independent Sch. District*,
    233 F.3d 871 (5th Cir. 2000) ...........................................................................................25

*Norcom Electronics Corp. v. CIM USA, Inc.*,
    104 F. Supp. 2d 198 (S.D.N.Y. 2000)..............................................................................25

*Nowak v. Ironworkers Local 6 Pension Fund*,
    81 F.3d 1182 (2nd Cir. 1996)............................................................................................25

*Phillips Plastic Corp. v. Kato Hatsujou Kaushiki Kaisha*,
    57 F.3d 1051 (Fed. Cir. 1995)............................................................................................3

*Prasco v. Medicis Pharmaceutical Corp*,
    ___F.3d___, 2008 WL. 3546217 (Fed. Cir. August 15, 2008)......................1, 4, 5, 10, 11
                                              12, 13, 14, 15, 17

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ..................................................................................18

*SanDisk Corp. v. STMicroelectronics, Inc.,*
    480 F.3d 1372 (Fed. Cir. 2007)................................................................1, 5, 13

*Sontag Chain Stores Co. v. National Nut Co.,*
    310 U.S. 281 (1940).........................................................................................8, 13

*In re Tyco Int'l Ltd. Sec. Litigation,*
    422 F.3d 41, 46 (1st Cir. 2005) ..............................................................................20

## STATE CASES

*Perry Homes v. Cull,*
    ___, S.W.3d___, No. 05-0882, 2008 WL. 1922978 (Tex. May 2, 2008)........................20

## FEDERAL STATUTES

Fed. R. Civ. P. 72(a) ............................................................................................................. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SHELL OIL PRODUCTS COMPANY LLC** | § | |
| **And MOTIVA ENTERPRISES, LLC,** | § | |
| **Plaintiffs,** | § | **Civil Action No. 4:08-cv-01309** |
| | § | |
| **vs.** | § | |
| | § | |
| **CLASSIC INDUSTRIES, LP, CLASSIC** | § | |
| **ARCHITECTURAL PRODUCTS, LP, et al.,** | § | |
| **Defendants.** | § | |

## DEFENDANTS' OBJECTIONS TO MEMORANDUM
## AND RECOMMENDATION OF THE
## <u>UNITED STATES MAGISTRATE JUDGE AND BRIEF IN SUPPORT</u>

Defendants Classic Industries, LP, Classic Industries, Inc., Classic Architectural Products, LP, Classic Capital Management, LLC, RLW, GP, Management, LLC, SKW, GP, Management, LLC and Rickey L. Wilson (collectively, "Classic"), pursuant to Federal Rules of Civil Procedure 72(a), hereby file these Objections to the Memorandum and Recommendation of the United States Magistrate Judge dated August 26, 2008 (the "Recommendation") and identifies the portions of the findings, conclusions, or recommendations to which objection is made, and sets out fully the basis for each objection as follows:

## <u>INTRODUCTION</u>

The Magistrate Judge's recommendation that there is an actual controversy for the Plaintiffs' patent law declaratory judgment claims is simply at odds with the undisputed facts and recent case law; indeed, the very case law cited in the Recommendation.[1]   Under the Recommendation, it would be virtually impossible for there *not* to be a justiciable controversy if

---

[1] The cases that require a different holding, and which are cited in the Recommendation, are *Prasco v. Medicis Pharmaceutical Corp*, ___F.3d___, 2008 WL 3546217 (Fed. Cir. August 15, 2008); *Cat Tech LLC v. Tubemaster, Inc.*, ___F.3d___, 2008 WL 2188049 (Fed. Cir. 2008); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007); and *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1344 (Fed. Cir. 2007).

a patent holder ever mentioned the words patent or license in a discussion. However, the law requires a finding of concrete, affirmative acts by the patentee (*i.e.*, Classic) that demonstrate that the patentee wishes to assert its rights as a patent holder against the Plaintiff. There are simply no acts by Classic sufficient under the law to create an actual controversy based on the very cases cited in the Recommendation.

The Magistrate Judge bases her recommendation that there is an actual controversy on one singular fact—the allegation that an attorney for Classic informed the Plaintiffs, as part of licensing negotiations in 2007 and in response to the Plaintiffs asking about the possibility of using a third party supplier to provide fascia systems covered by Classic's Premier S Patents that, "All any vendor would have to do is pay [Classic] a license fee to sell Lazy S [*i.e.*, Premier S]."[2] *See* Recommendation at p. 7.  In order to view this benign statement as triggering a case or controversy, the Magistrate Judge has made insupportable inferences that this statement triggered an "imminent threat of an infringement suit" against the Plaintiffs (Recommendation at p. 21), even though the statement was concerning third parties, a cooperative response to the Plaintiffs' question of whether a third party vendor could provide the Premier S materials, and part of discussions in 2007 that resulted in a new contract and license agreement for the Plaintiffs to use the Premier S fascia systems of Classic. Most importantly, the Recommendation glosses over the fact that Plaintiffs initially pled, in the Original Complaint, that Classic "threatened" an infringement suit during the 2007 discussions and then in the subsequent Amendment removed "threatened." *See* Recommendation at pp. 18-19.  This alteration was not immaterial, but rather an admission that there was no threat made by Classic at this meeting, and, though Plaintiffs

---

[2] It is important to note that the Plaintiffs continually change their story in order to try and create an actual controversy. For example, the Plaintiffs originally stated that Classic explicitly threatened to sue the Plaintiffs for patent infringement, only to withdraw this allegation in its First Amended Complaint after Classic informed the Court of the falsity of this statement. *See* Recommendation at p. 18-19. The Plaintiffs have also tried to put forward other unpled theories in an attempt to establish an actual controversy, and the Magistrate Judge properly refused to consider these theories. *Id.* at p. 21 (n.31).

**DEFENDANTS' OBJECTIONS TO MEMORANDUM AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE AND BRIEF IN SUPPORT**                    **Page 2**

supported their pleadings with affidavits, Plaintiffs could not get any witness to swear, under oath, that the alleged statements of Classic's counsel were in any way threatening. Indeed, this should be viewed as nothing more than a lawyer-created fiction.[3] The Magistrate Judge, without any support, argues this statement was Classic directly accusing the Plaintiffs of inducing infringement should they contract with a third party. *See* Recommendation at p 21. The alleged statement cannot create a controversy under the law or as a matter of logic. Such a statement by Classic about *third parties* does not even approach creating an actual controversy with Shell; otherwise, even the mere mention of the word "license" would create a justiciable controversy since, based on the Recommendation, it could be inferred that the failure to take a license would result in an infringement suit. The approach advocated in the Recommendation has been explicitly rejected by the Federal Circuit. *See Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985) (holding that the mere offer of a license is not a sufficient basis for declaratory jurisdiction); *Phillips Plastic Corp. v. Kato Hatsujou Kaushiki Kaisha*, 57 F.3d 1051 (Fed. Cir. 1995), overruled on other grounds, *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007). The requirements of finding a justiciable controversy create a much higher barrier to suit than the reasoning adopted in the Recommendation, and it is doubtful the courts would wish to adopt the reasoning in the Recommendation as the inevitable result would be the severe erosion of the rights of patent holders and the inundation of the courts with patent invalidity and unenforceability claims as licensees begin to use the courts as a coercive tactic to obtain more favorable licensing terms.

---

[3] *See* Plaintiffs' Surreply in Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint Under Federal Rule of Civil Procedure 12(b)(1) [Docket No. 24]. Incredibly, the Plaintiffs' claimed in this motion that the initial allegation that Classic threatened Shell with an infringement lawsuit was false. The Plaintiffs said, "Here, through further investigation Shell-Motiva has learned that Classic may not have expressly threatened a lawsuit . . . ." *Id.* at p. 4. The Plaintiffs withdrew the Surreply on July 17, 2008 [Docket No. 49] and incorporated the same arguments into the First Amended Complaint.

The law simply requires a much higher threshold be passed in order to create an actual controversy. For example, in the very recent *Prasco* decision,[4] which is the case perhaps most similar to the case at hand,[5] the Federal Circuit found there was no actual controversy and there is only an actual controversy in the declaratory judgment context when the "parties have taken adversarial positions with regards to their obligations, each side presenting a concrete claim of a specific right prior to suit." 2008 WL 3546217 at *6. The Federal Circuit went on to say that an actual controversy does not exist even if a party "perceives. . . a patent to pose a risk of infringement, without some affirmative act by the patentee [*i.e.*, Classic]." *Id.* In this instance, innocuous statements made during contract negotiations more than a year ago are being distorted and altered to indicate some nefarious intent and menacing threat on behalf of Classic, and this is unwarranted and contrary to the law and the facts in this suit. Plaintiffs have no real fear of an infringement suit, and it is undisputed that Plaintiffs, after the alleged statement was made, entered into an extension of the Agreement granting them a license to use the Premier S Patents, thereby eliminating any possibility that they would be sued for infringing the Patents. Rather, the Plaintiffs are seeking to invalidate the Patents to strong-arm Classic into other contractual concessions. This tactic should be transparent to this Court considering that for eight years the Plaintiffs have acknowledged the Patents in writing and enjoyed the benefits of the Patents they only now seek to invalidate while, simultaneously, seeking an advisory opinion that their products do not infringe the Patents. This is precisely what *Prasco* cautioned against.

---

[4] For a full analysis of the *Prasco* decision, please see Classic's Response to Plaintiffs' Notice of New Appellate Decision Bearing on Defendants' Pending Motion to Dismiss Under FRCP 12(b)(1). (Docket No. 74).
[5] *Prasco*, LLP ("Prasco") was a plaintiff that brought a declaratory judgment action against defendants Medicis Pharmaceutical Corporation and Imaginative Research Associates, Inc. (together, "Medicis") seeking a declaration that its benzoyl peroxide cleansing product, OSCION, did not infringe the defendants' patents. *Prasco*, 2008 WL 3546217 at * 1. At the time it filed its declaratory judgment action, Prasco had not begun selling OSCION, but had devoted substantial efforts to marketing and developing the product. *Id.*

**DEFENDANTS' OBJECTIONS TO MEMORANDUM AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE AND BRIEF IN SUPPORT**                    **Page 4**

The other cases provide similar guidance. For example, in *SanDisk* the Federal Circuit required concrete, affirmative acts by the patentee such as providing a patent infringement analysis to the alleged infringer that detailed on an element-by-element basis how the patentee believed its patents were being infringed by the alleged infringer, including reverse engineering reports, diagrams detailing the infringement, and the patent holder "liberally referring" to its believed infringement of the patents. 480 F.3d at 1382; *see also* Recommendation at p. 14. Similarly, in *Benitec* the Federal Circuit held that the plaintiff's mere assertion that it would begin potentially infringing activity "shortly" with an unnamed party a "scant showing" that was insufficient to provoke a declaratory judgment suit since it would "allow nearly anyone who so desired to challenge a patent." 495 F.3d at 1348. Moreover, the *Benitec* Court found there was no actual controversy even though the patent holder filed a suit for infringement, the defendant wished to assert a declaratory judgment claim declaring the patent unenforceable and invalid, and the patent holder then withdrew its lawsuit. *Id.* at 1342-43; 1347-48; *see also* Recommendation at p. 15. It is simply unfathomable that in this instance there is an actual controversy when Classic has never accused the Plaintiffs of infringement, never filed a suit against any party to enforce a patent, much less the Plaintiffs, for infringement, and the only "evidence" of an actual controversy is an alleged statement made about third parties during the middle of successful contract negotiations (which Plaintiffs have inferentially admitted was not a threat). Construing an expressed willingness to license a hypothetical third party to use the Patents under purely speculative circumstances as a threat simply defies what the Federal Circuit has required in cases like *San Disk, Prasco, and Benitec*. Accordingly, the Recommendation of the Magistrate Judge should be set aside and/or reversed under a *de novo* standard of review, and

the Court should grant Classic's 12(b)(1) Motion because the fact is that Classic has taken no threatening actions and no justiciable controversy exists.[6]

Because no justiciable controversy exists as to Shell's patent claims, this Court lacks jurisdiction over this case in its entirety and the Court should grant Classic's 12(b)(1) Motion. Without subject-matter jurisdiction, the correct procedure for this Court is to disregard the recommendation to grant the Plaintiffs' Motion for Separate Trials, to Compel Arbitration, and to Stay Commercial Claims ("Motion to Compel Arbitration") on certain state law claims as dismissal is the only required ruling as to all claims.

## STANDARD OF REVIEW

A district court reviewing the report and recommendations of a magistrate judge review legal conclusions *de novo* and factual findings under a clearly erroneous standard. *See Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204 (N.D. Tex. 1996) (noting that the clearly erroneous standard applies to the factual components and that legal conclusions are reviewed *de novo*).

## OBJECTIONS

Classic objects to and identifies the following portions of the findings, conclusions, or recommendations to which objections are made:

**12(B)(1) RECOMMENDATIONS**

1.     Classic objects to the statement at the top of page 5 of the Recommendation that the March 1, 2006 Blanket Agreement ("Agreement") between the Plaintiffs and Classic "does

---

[6] Classic hereby incorporates in their entirety the following motions related to the 12(b)(1) Motion: Classic's Reply Brief in Support of Its Motion to Dismiss Plaintiffs' Complaint Under FRCP 12(b)(1) and Brief in Support [Docket No. 22]; Classic's Supplemental Brief in Support of Motion to Dismiss Plaintiffs' Complaint Under Federal Rule of Civil Procedure Rule 12(b)(1) and Motion to Transfer [Docket No. 48]; Classic's Supplement to Motion to Dismiss Plaintiffs' Complaint Pursuant to FRCP 12(b)(1) [Docket No. 55]; and Classic's Reply Brief in Support of its Motion to Dismiss Plaintiffs' Amended Complaint Under Federal Rule of Civil Procedure Rule 12(b)(1) and Brief in Support [Docket No. 64].

not mention any particular patent, much less specifically identify the Premier S patents as belonging to Defendants" to the extent this statement serves as a basis for the finding that the Plaintiffs did not know the nature and/or scope of the Premier S Patents owned by Classic until August of 2007 and that the Agreement and/or its subsequent extension was not a license allowing Shell to use Classic's Premier S Patents. The Premier S Patents are the only patents Classic has ever owned, and are the only patents that could be referenced in Paragraph 10 of the Agreement.[7] *See* Recommendation at p. 4. Further, Classic was providing, at least as early as 2003, installation manuals to Shell with every Premier S canopy that specifically referenced the Premier S Patents and Classic from at least 2002 affixed a patent label to each shipment of Premier S material sent to Shell.[8] In fact, Keith McBride, a Shell representative, as part of the negotiations resulting in the execution of the Agreement's extension, wrote in a December 21, 2007, email to Classic that, ""Classic will continue to license its intellectual property rights in its Premier S patents to Shell . . . ."[9] Consequently, the factual conclusions on the top of page 5 of the Recommendation should be set aside as they are clearly erroneous. *See Brooks v. Snow*, 313 F.Supp.2d 654, 658 (S.D. Tex. 2004) (a Court may consider undisputed facts evidenced in the record and can resolve disputed facts as part of its 12(b)(1) analysis).

    2.    Classic objects to the statements on the top of page 6 of the Recommendation that "Plaintiffs discovered in August of 2007 that Defendants held design patents on the s-shaped fascia. Prior to that, Plaintiffs believed that Defendants held utilitarian patents on the mounting

---

[7] *See* App. 002 to Classic's Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Any reference to "App." will refer to Classic's Appendix to the Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For ease of reference, Classic is filing contemporaneously herewith the Classic's Appendix in Support of its Objections to Memorandum and Recommendation of the United States Magistrate Judge and Brief in Support, which includes true and correct copies of portions of the appendices that are a part of the record and relied on by Classic in support of its objections are attached hereto as Exhibit A.
[8] *See* App. 065; App. 094- 096.
[9] *See* App. 041.

brackets only." These statements are clearly erroneous. Again, Classic was providing, at least as early as 2002/2003, installation manuals and patent labels with each shipment of Premier S material sent to Shell.[10]   The patent numbers referenced begin with a D to indicate they are design patents.[11]   Moreover, these design patents were publicly filed since 2001 and therefore are part of the public domain and notice is deemed to have been given to the Plaintiffs of the scope and nature of the patents since their issuance in 2001. *See Sontag Chain Stores Co. v. Nat'l Nut Co.*, 310 U.S. 281, 295 (1940) ("All patents must be recorded, together with the specifications, in the Patent Office in books to be kept for that purpose. Constructive notice goes thus to all the world."). Indeed, a ten to fifteen minute search of the website of the United States Patent & Trademark Office website would locate the full text of the patents, which is a fact even confirmed by Shell's own witness, Keith McBride.[12]   It is undisputed that the Plaintiffs entered into and executed a March 1, 2006 Agreement in which Classic explicitly reserved its rights in its patents, the Premier S Patents—the only patent ever owned by Classic.   The Plaintiffs submitted the term to its in-house counsel for approval and then explicitly agreed to this provision of the Agreement.[13]   There is no allegation that Classic refused to provide the Plaintiffs materials on its patents—materials that were publicly available anyway.[14]   It is simply not plausible that the Plaintiffs did not know of the nature of Classic's Premier S Patents since, at the latest, 2003.   At an absolute minimum—if one would choose to simply shut their eyes to the evidence of Shell's actual knowledge—Shell had constructive knowledge of the Patents and their

---

[10] *See* App. 065; App. 094 - 096.
[11] Non-utility patents must include a prefix: 'D' for design patents, 'PP' for plant patents, 'RE' for reissue patents, 'T' for defensive publications, and 'H' for SIRs," available at *http://www.uspto.gov/patbib/help/helpfaq.html* (accessed on July 27, 2008).
[12] Deposition of Keith McBride ("McBride Dep."), Vol. 1, at pp. 273:7 - 274:6.   True and correct copies of the relevant excerpts from the deposition are attached hereto as Exhibit B.
[13] *See* App. 036 - 040.
[14] In fact, the only indication is that Classic provided information on the patents whenever it was requested by the Plaintiffs. *See* Recommendation at the bottom of p. 6.

contents as a matter of law.  Accordingly, the factual conclusions of the Magistrate Judge on the top of the page 6 are clearly erroneous and fail under a *de novo* review as to constructive knowledge. *See Brooks*, 313 F.Supp.2d at 658.

3.    Classic objects to the full paragraph on page 19 that outlines the efforts of the Plaintiffs to contact potential vendors, and specifically states, in part, "If Plaintiffs provided the vendor with the drawings and specifications developed by Defendants, the amended complaint suggests, they could avoid redevelopment costs.  Plaintiffs also learned that they would have to agree to indemnify the vendor against infringement claims that might be asserted by Defendants. Given these options, Plaintiffs chose to extend their agreement with Defendants, at least for the next two months."  The Magistrate Judge, through the above statement, is attempting to meet the prongs required before there is an actual controversy by conjecturing about steps taken to conduct infringement activity by the Plaintiffs as well as inferring apprehension on behalf of the Plaintiffs that Classic would assert its rights as a patentee.  However, the facts as pled do not meet the justiciable controversy requirements.

First, the Plaintiffs are affirmatively seeking a declaration that they do not infringe.  *See* First Amended Complaint at pp. 15-16.  If neither party is making a definite statement that infringing activity is occurring or is about to occur, there can be no justiciable controversy as a matter of law. *See Cat Tech*, 2008 WL 2188049 at \*7.

Additionally, it appears the Recommendation is trying to portray the Plaintiffs as having no choice but to bring this suit because of their fear of an infringement suit.  This is simply not warranted.  The Recommendation focuses on the fact that the Plaintiffs learned: (1) they could avoid redevelopment costs by getting Classic's drawings and specifications related to the Premier S Patents; and (2) vendors requested indemnification from the Plaintiffs.  First, the

Plaintiffs, by their own admission, never incurred any development costs.[15]  If Plaintiffs are to be believed, Plaintiffs brought this suit because they did not like the business and contract terms other third-party vendors proposed, and because Classic was able, due to its expertise gained during the development of the patented design, offer cheaper and better products, and the Plaintiffs brought this suit in an effort to coerce more favorable contract concessions or force Classic to provide its patented expertise to the marketplace as a whole.  The Recommendation actually demonstrates there was no reasonable fear of an infringement suit based on any affirmative conduct of Classic, which is the required focus of the test for a case or controversy[16], and that any such claim was merely a pretext by the Plaintiffs.  The actions described by the Recommendation simply do not describe the type of concrete, affirmative acts by Classic against Shell nor does it describe a substantial, real, and immediate dispute that justifies the bringing of a declaratory judgment action.  *See MedImmune v. Genetech*, 127 S.Ct. 764, 771 (2007).  The fact the Plaintiffs may have to incur additional expense or agree to contract terms they are not fond of is hardly the type of substantive and immediate controversy contemplated by the Declaratory Judgment Act and Article III.

Moreover, there is simply nothing indicating concrete, definitive steps to infringe by the Plaintiffs—only vague assertions that some vendors were contacted, although it is not clear exactly what steps were taken or are about to be taken.  Indeed, the Magistrate Judge even states, "The amended complaint provides no further information about Plaintiffs' relationship with Defendants or any other supplier after that time [mid-2007]."  Recommendation at p. 19.  A declaratory judgment plaintiff must show it has taken "significant, concrete" acts to infringe the patents-in-suit, or else "the dispute is neither 'immediate' nor 'real' and the requirements for

---

[15] *See* McBride Dep., Vol. II, at p. 180:15- 181:12 (Ex. B).

[16] *See Prasco*, 2008 WL 3546217 at *5

justiciability have not been met." *Cat Tech*, 2008 WL 2188049 at *7.  Based on the First Amended Complaint, it was well over a year ago, in June of 2007, that vendors were contacted by the Plaintiffs. *See* First Amended Complaint at p. 8.  No infringement action has ever been taken, hinted at, or threatened by Classic against the Plaintiffs in the interim, hardly making the threat of injury imminent.  Moreover, as will be shown below, the case law precludes a finding of an actual controversy in this suit when the infringing activity is so speculative.

In *Benitec* the party attempting to declare there was an actual controversy told the Court that it would begin infringing "shortly," and that a confidentiality agreement with a potential supplier had already been executed that was a prerequisite to begin the infringing activity. 495 F.3d at 1348.  The Court held that, despite no evidence to the contrary regarding whether infringing activity was about to commence, that this was simply not enough to create an actual controversy barring a showing of specific infringing activity occurring or about to occur. *Id.* at 1349.  Indeed, the Court stated, ". . .[T]o allow such a scant showing to provoke a declaratory judgment suit would be to allow nearly anyone who so desired to challenge a patent." *Id.*

Similarly, in *Prasco,* the party asserting the declaratory judgment action had not yet begun selling the allegedly infringing product, but had devoted substantial efforts to marketing and developing the product.  2008 WL 3546217 at * 1.  Despite this, the Court found there was no actual controversy because there was no objective threat of real and immediate injury. *Id.* at *2, 5. The Federal Circuit noted that typically there is only an actual controversy in the declaratory judgment context when the "parties have taken adversarial positions with regards to their obligations, each side presenting a concrete claim of a specific right prior to suit." *Id* at *6. A party attempting to bring a patent law declaratory judgment claim has to meet the high burden to show a threat was "real, imminent, and traceable to the defendants." *Id.*  The simple fact is

that there are no clearly adversarial positions in the present dispute between the Plaintiffs and Classic regarding the Plaintiffs' use of Classic's patents.  Classic has *never* taken a position that the Plaintiffs have infringed its patents in this suit or prior to this suit.  Similarly, Plaintiffs have alleged that they are not infringing any of Classic's patents.  There are no clearly delineated adversarial positions that the Plaintiffs can even point to, other than its unwarranted and illogical inferences that Classic even referencing the word license creates an actual controversy.  The attempts to derive an actual controversy out of the present facts are simply rejected by Federal Circuit precedent as speculative and insufficient to create an actual controversy.

Both *Benitec* and *Prasco* involved more definitive and concrete acts of claimed infringement against the party actually bringing the declaratory judgment claims (and not third parties), yet in neither of these instances was an actual controversy found by the Federal Circuit. The burden is appropriately on the Plaintiffs to show an actual controversy exists, and that has not been shown in the Recommendation, and therefore the Recommendation regarding the finding of an actual controversy should be set aside and/or reversed under a *de novo* standard of review.

4.     Classic objects to the statement on page 20 of the Recommendation that, "Although the two parties are in contract with one another, the [Blanket] agreement does not mention the particular patents in issue, much less license them to the purchasee." Classic herein incorporates by reference in its entirety the arguments and evidence in Objections 1 and 2, and requests that this Court set aside this finding as it is clearly erroneous. Moreover, the filings of the patents acted as constructive notice to the Plaintiffs of the nature and scope of the patents, and so to the extent the Magistrate Judge is basing her conclusion that the Plaintiffs were not

aware of the design nature of the Premier S Patents until 2007, this finding should be set aside under a *de novo* standard of review. *See Sontag*, 310 U.S. at 295.

5.    Classic objects to the legal conclusion on page 20 of the Recommendation that, "The question of infringement did not arise from Plaintiffs' usage of the manufactured products; rather, it became an issue only when Plaintiffs began exploring other manufacturing/supplier options. The significance of this distinction is that Defendants did not need to provide Plaintiffs with a detailed infringement analysis to inform Plaintiffs of the patent claims and the potential for infringement.  All that was necessary to raise the issue of potential infringement was for Defendants to notify the Plaintiffs that they held design patents on the fascia that they were supplying Plaintiffs."  Classic objects because this last sentence is a gross misstatement of the law, and would mean that merely notifying a party you have a patent would create an actual controversy.  The Federal Circuit has stated, "*MedImmune* does not change our long–standing rule that the existence of a patent is not sufficient to establish declaratory judgment jurisdiction." *See Prasco*, 2008 WL 3546217 at *5.  Indeed, as the act of publicly filing patents is deemed to give constructive notice to the world, then this statement in the Recommendation would mean every patent holder, simply by owning a patent, creates an actual controversy. *See Sontag*, 310 U.S. at 295.

Moreover, the Magistrate Judge attempts to create this distinction because, otherwise, cases such as *Prasco*, *San Disk*, and *Benitec* would require more definitive and affirmative acts on behalf of the patentee than merely making a statement about the possibility of third parties needing a license.  However, no such distinction is warranted.  The key question remains what are the acts of Classic directed to Plaintiffs to assert its rights as a patent holder against the Plaintiffs by bringing or threatening an infringement action.  The fact the Plaintiffs were not

manufacturing the licensed products is a distinction without a difference. If a distinction were to be made, then it certainly appears a much more logical distinction is that in the above-referenced cases a threatening act was made directly against the party attempting to bring a declaratory judgment, not against unnamed, hypothetical third parties. Regardless, there is still a requirement that Classic affirmatively and clearly conduct such actions such that a reasonable person would believe Classic was about to bring litigation or other actions against the Plaintiffs that created a real and immediate controversy. In this instance, that might have been accomplished by such acts as bringing an infringement suit, sending a demand letter in which infringement by the Plaintiffs was accused and detailed (i.e. a detailed infringement analysis of whatever products would infringe or acts that would constitute inducement), and conducting an infringement analysis of the prototype the Plaintiffs had a vendor build[17] over which the Plaintiffs have expressed concern about infringement. None of these acts occurred nor did any other act occur that would lead a reasonable person to conclude that Classic would bring a patent infringement suit against Plaintiffs. The sole allegation is the innocuous statement of Classic in response to an inquiry from Plaintiffs, that Plaintiffs themselves refused to classify as a threat as evidenced by the retraction of that allegation. Further, if there were any controversy, it was resolved after the alleged statement by Classic was made when Classic and the Plaintiffs executed an extension of the Agreement under which the Plaintiffs were allowed to use the Premier S fascia design. The Recommendation simply cannot be reconciled with the Federal Circuit law when in *Benitec* even the act of filing an infringement suit, and then later withdrawing it, was not enough to create an actual controversy. 480 F.3d at 1342-1343; 1347-48. Or a case such as *Prasco* where there no actual controversy was found after a party refused to sign a covenant not to sue for infringement and only a couple of years earlier the patent holder

---

[17] *See* Recommendation at p. 19.

had sued for patent infringement the very party attempting to bring the declaratory judgment actions. 2008 WL 3546217 at *5. Classic has never sued any party, including the Plaintiffs, for patent infringement. Further, in *Prasco*, just as in this case, a party was claiming there was an actual controversy due to the "paralyzing uncertainty" of a potential infringement suit. *Id.* The Federal Circuit rejected this argument, stating that, "Although *MedImmune* clarified that an injury-in-fact sufficient to create an actual controversy can exist when there is no apprehension of suit, it did not change the bedrock rule that a case or controversy must be based on a <u>real</u> and <u>immediate</u> injury or threat of future injury that is <u>caused by the defendants</u>—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Id.* Thus, it is simply not a colorable argument that, under an objective standard, it was a reasonable fear to believe a single, alleged statement (which was admittedly non-threatening) made about third parties more than a year ago in response to a question posed by the Plaintiffs, and prior to the extension of the Agreement, creates an actual controversy in this instance of real and immediate injury. If that is the case, then a party need merely ask a patent holder if it will sue them for infringement, and if the response is anything other than an unqualified no, which creates a potential cause of action should that party later be sued for infringement, then there is an actual controversy. That is not the law, and is a result that would deluge the Courts with declaratory judgment actions and undermine the certainty that patent rights are intended to bestow on patent holders.

6.     Classic objects to the paragraph at the bottom of page 20 and the top of page 21 of the Recommendation. This paragraph reads:

> Of course, notifying Plaintiffs of the patents, in and of itself, carried no threat of suit. The apprehension of suit arose only when Defendants' attorney made a statement conveying Defendants' belief that Plaintiffs could not contract with a different manufacturer, as

they had planned, without securing a license. Defendants contend that the statement was innocuous, but, in fact, it revealed Defendants' opinion that Plaintiffs would be inducing infringement if they contracted with another vendor to produce the fascia. According to the amended complaint, it forced Plaintiffs into a decision to contract with Defendants to eliminate the imminent threat of an infringement suit.

Recommendation at pp. 20-21.

Before considering the above paragraph, keep in mind the statement made by Classic's in-house counsel in the middle of overall contract negotiations, and in response to a question posed by the Plaintiffs regarding the feasibility of using third party vendors to provide Premier S fascia systems, was, "All any vendor would have to do is pay [Classic] a license fee to sell Lazy S [i.e. Premier S]." This was an off-hand comment to a purely hypothetical question made to assure the Plaintiffs that Classic was willing to cooperate if Plaintiffs desired additional or alternative suppliers. As a matter of law, discussing a license does not give rise to a justiciable controversy. *See Indium Corp.*, 781 F.2d at 883; *Phillips Plastic*, 57 F.3d at 1051. Construing it as an imminent threat of an infringement suit is not only legally impossible under controlling authority, it is preposterous—particularly in light of the undisputed fact that it led to an extension of the Agreement in December of 2007.

The above statement is the *only* basis stated in the Recommendation to support the determination there was an actual controversy for the Plaintiffs' declaratory judgment claims. The above-quoted paragraph is in direct conflict with the immediately preceding paragraph of the Recommendation that, "All that was necessary to raise the issue of potential infringement was for Defendants to notify Plaintiffs that they held design patents on the fascia that they were supplying Plaintiffs." Now, in this paragraph, the Recommendation concedes it takes more than just notifying the Plaintiffs of the fact the patents exist since that, "in and of itself, carried no

threat of suit." Recommendation at p. 20. This paragraph is also in direct conflict with Plaintiffs

tacit concession that the statements of Classic's in-house counsel were not a threat, which is

evidenced by Plaintiffs' Amendment which removed the statement that Classic "threatened"

Plaintiffs during the 2007 meeting.

The Recommendation, assuming the statement was made by Classic's attorney, makes

unwarranted leaps in order to reach a finding that there was an actual controversy. The statement

made was in fact innocuous, even friendly in light of the context, and the Magistrate Judge

derives meaning and intent that simply does not exist in the statement as made. The law requires

a far more affirmative and definitive act, and not the inference of nefarious intent that goes far

beyond the actual words used in a statement made in the spirit of cooperation regarding third

parties. *Prasco* states that the "parties [must] have taken adversarial positions with regards to their

obligations, each side presenting a concrete claim of a specific right prior to suit." 2008 WL

3546217 at *6. There is nothing adversarial, much less concrete, about the statement allegedly

made by Classic' representative—about a purely hypothetical question posed by the Plaintiffs no

less.

Additionally, the Eastern District of Texas has stated that the patentee must have taken

concrete, affirmative acts that put a party on notice that the patentee intends to assert its rights as

a patent holder against that party, and that it is not enough merely that a party is generally uneasy

about potentially infringing at some point in the future. *See Astec America, Inc. v. Power-One,*

*Inc.*, 2008 WL 1734833 at *2 (slip copy) (E.D. Tex. 2008). Moreover, it is an objective

standard, and it must be a statement made that would put any reasonable person in apprehension

of an infringement suit, not simply conjecture or speculative fear of future harm. *See Prasco,*

2008 WL 3546217 at *5. In this case no reasonable, objective person would have viewed the

alleged statement made during overall contract negotiations as a threat, especially in the context of the statement. The simple fact is the Recommendation was not based on the statement allegedly made by Classic, but rather on an unwarranted extrapolation of that statement in which words and meaning are imposed upon Classic that were never said or intended. This is fundamentally unfair and contrary to what the law allows, especially in light of the fact it is the Plaintiffs' burden to demonstrate there is jurisdiction, and it is not Classic's responsibility to explain away statements that were in fact never made. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Finally, the Recommendation reaches an unwarranted conclusion that the Plaintiffs were forced into a decision to contract with Classic to eliminate the threat of an infringement suit. *See* Recommendation at p. 21. This conclusion, on top of being inconsistent with the alleged facts, is irrelevant to the analysis. After all, any alleged statement made by Classic, regardless of how innocuous it was or was intended to be, was made prior to the extension of the Agreement that occurred in December of 2007. This extension would have resolved any fear of Classic asserting its rights as a patent holder, as insignificant or unreasonable as these fears may have been, between the Plaintiffs and Classic based on the statement allegedly made by Classic' in-house counsel. It is undisputed that the extension expired in February 2008, and since that time there has been no agreement between the parties in this suit. *See* Recommendation at p. 7. Yet, since the Agreement has expired there has not been one allegedly threatening statement made by Classic, and Classic has not even made a hint it was considering filing an infringement action against the Plaintiffs. There can be no real, imminent, and substantive controversy in this context, and it simply strains credulity to claim a statement allegedly made at some point in the fall of 2007 creates an imminent threat of an infringement suit more than a year later under entirely different circumstances.

In sum, the above quoted paragraph from pages 20-21 of the Recommendation reaches an incorrect and baseless legal conclusion that should be set aside and/or reversed under a *de novo* standard of review, and Classic's 12(b)(1) Motion should be granted in its entirety.

7.    Classic further objects to the paragraph at the top of page 22 of the Recommendation that states, "Thus, the Court finds that a substantial, legal controversy exists between Plaintiffs and Defendants under the facts alleged and that it is sufficiently real and immediate to deter Plaintiffs from taking the action contemplated, which arguably would infringe Defendants' patents." Classic hereby incorporates by reference its previous objections and arguments, and for these reasons, the Court's finding is contrary to the law and the facts, and must be set aside and/or reversed under a *de novo* standard of review.

## MOTION TO COMPEL ARBITRATION OBJECTIONS

8.    Classic objects to the statements that the, "Defendants concede that they received written notice on May 6, 2008, and that the consultation period expired on July 5, 2008. Therefore, all conditions precedent to arbitration have occurred." The above statements are incorrect. Classic denies, and has always denied, that all conditions precedent have occurred, and that a consultation has occurred as required by Section 31 of the Agreement. Classic explained in its Response to the Plaintiffs' Motion to Order Separate Trials, Compel Arbitration, and Stay Commercial Claims [Docket No. 74] ("Response") how the May 6, 2008, letter was nothing more than a demand letter that summarily restated the Plaintiffs' nonsensical claims. Response at p. 8. Classic wrote that the May 6 letter, ". . . fails to qualify as a consultation the Agreement requires in order to initiate arbitration." *Id.* Moreover, Shell ran to the Southern District and filed its Lawsuit against Classic before even engaging in the consultations with Classic as required by Section 31 of the Blanket Agreement as condition precedent to arbitration.

Instead of consulting, Plaintiffs just filed a lawsuit against Classic. It cannot be that Plaintiffs can file this suit to cause Classic additional expense and to see whether Classic will defend itself vigorously, and then choose which forum it thinks is best after having a chance to ferret out Classic's claims and defenses at great expense and prejudice to Classic. *See Perry Homes v. Cull*, ---S.W.3d---, No. 05-0882, 2008 WL 1922978 at *8 (Tex. May 2, 2008) ("[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of it arbitral rights simply to gain an unfair tactical advantage over the opposing party.") (quoting *In re Tyco Int'l Ltd. Sec. Litigation*, 422 F.3d 41, 46 (1st Cir. 2005)). Consequently, the finding that Classic conceded it was given written notice as required by the Agreement on May 6, 2008 is clearly erroneous, and to the extent this forms the basis for granting the Motion to Compel Arbitration, the Recommendation should be disregarded under a *de novo* standard of review.

9.    Classic objects to the first paragraph on page 23 of the Recommendation in which the Magistrate Judge finds that all of the claims the Plaintiffs seek to compel to arbitration fall within the arbitration clause of the 2006 Agreement. The Magistrate Judge stated:

> Plaintiffs allege that Defendants failed to sell inventory at agreed upon prices, failed to treat Plaintiffs' information as promised in the agreement, and failed to return inventory and/or sales process, work product, and data at the expiration of the contract. According to the amended complaint, these claims do not relate to the patents at all, but rather, to the parties' agreement. Thus, they are arbitrable.

Similarly, Classic objects to the Magistrate Judge's statement on page 36 of the Recommendation that, "The following claims are identified by Plaintiffs as commercial claims subject to arbitration: breach of contract; request for injunctive relief; specific performance; unjust enrichment; constructive trust; money had and received; promissory estoppel; conversion; trespass to chattels; common fraud/fraudulent inducement; theft liability act—theft of property;

and misappropriation of trade secrets.  Those claims should be arbitrated as prescribed in the parties' agreement."

The Recommendation does not include any analysis of whether or not these claims actually fall within the scope of the arbitration clause found within the 2006 Agreement, but rather relies on very superficial and overly broad statements made by the Plaintiffs.  Indeed, the Amended Complaint, contrary to what is stated in the Recommendation, does not support the finding that all of the "commercial claims" are within the scope of the arbitration clause.  The issue is the very broad approach in the Recommendation for determining which claims fall within the arbitration clause is inappropriate in this instance because the broad causes of action asserted by the Plaintiffs have within them distinct claims and/or subclaims, some of which relate to the 2006 Agreement, and some of which concern the claims regarding the Premier S Patents being fraudulently procured.  The only claims even arguably within the scope of the arbitration clause are those "arising out of or related to this Agreement."[18]  Classic concedes that Shell's inventory-related claims arise out of the 2006 Agreement.[19]  However, the remaining claims do not, and are separate and independent from the 2006 Agreement.  For example, Shell asserts that the claims related to the return of engineering drawings and specifications pertaining to the Premier S designs concerns information allegedly provided in 1999 or earlier by Shell as this is the information the Plaintiffs contend that Classic used to procure the Premier S Patents, which were applied for in 2000 and issued in 2001.[20]  These claims simply do not arise from and are wholly independent of the 2006 Agreement, although Shell lumps them in with the designation of "commercial claims."  The chart below lists broad causes of action that the

---

[18] *See* App. 005 to 027 (2006 Agreement at ¶ 31).
[19] Of course, for all the reasons stated in Classic's Response to the Motion to Compel Arbitration and Classic's Rule 12(b)(6) and 12(b)(1) motions, Classic does not believe that this Court has jurisdiction to order arbitration of any claims, Shell has waived its right to arbitrate, and the claims should be dismissed pursuant to Rule 12(b)(6).
[20] First Amended Complaint at ¶ 23.

Magistrate Judge has recommended be compelled to arbitration and then describes which specific claims within those broad causes of action do not arise from the 2006 Agreement, and therefore should not be compelled to arbitration:

| Causes of Action the Magistrate Judge Recommended be Compelled to Arbitration | Causes of Action and/or Subclaims That Do *Not* Fall Within the Scope of the Arbitration Clause |
|---|---|
| Breach of Contract | Breach of Contract claims related to:<br>a. Failure to return engineering drawing and specifications related to the "Lazy S" designs; and<br>b. Claims related to the failure to return any confidential information provided prior to the Premier S Patent applications in 2000.<br><br>(Amended Complaint at ¶ 91). |
| Request for Injunctive Relief | Injunctive Relief request related to the alleged failure to return any of the drawings or specifications related to the "Lazy S" designs.<br><br>(Amended Complaint at ¶¶ 100-105). |
| Specific Performance | Specific Performance claim related to the alleged failure to return any drawings or specifications related to the "Lazy S" designs.<br><br>(Amended Complaint at ¶¶ 95-97). |
| Unjust Enrichment | Unjust enrichment claim related to the failure to return drawings and specifications related to the "Lazy S" designs.<br><br>(Amended Complaint at ¶ 111). |
| Constructive Trust | |
| Money Had and Received | |
| Promissory Estoppel | Promissory Estoppel claims related to:<br>a. The failure to return any drawings or specifications related to the "Lazy S" |

| | |
|---|---|
| | designs; and<br><br>b. The failure to keep information confidential that breached promises allegedly made by Classic in 2000 or earlier.<br><br>(Amended Complaint at ¶¶ 118-123). |
| Conversion | Conversion claims regarding any drawings or specifications related to the "Lazy S" designs or any allegedly confidential information provided to Classic in 2000 or earlier.<br><br>(Amended Complaint at ¶¶ 125-131).<br><br>Additionally, there is a separately listed cause of action for the conversion of the "Lazy S" designs that even the Plaintiffs agree is not arbitrable, but it was unclear from the Recommendation whether or not the Magistrate Judge was also recommending this claim be compelled to arbitration.<br><br>(Amended Complaint at ¶¶ 58-62). |
| Trespass to Chattels | Trespass to Chattels claim regarding confidential information, drawings, and specifications related to the "Lazy S" designs.<br><br>(Amended Complaint at ¶¶ 133-134). |
| Common Law Fraud/Fraudulent Inducement | Fraud/fraudulent inducement claims regarding drawings, specifications, and confidential information related to the "Lazy S" designs.<br><br>(Amended Complaint at ¶¶ 136-138). |
| Theft Liability Act-Theft of Property | Theft claims related to drawings, specifications, and confidential information related to the "Lazy S" designs.<br><br>(Amended Complaint at ¶¶ 145-146). |
| Misappropriation of Trade Secrets | Misappropriation of Trade Secrets claims related to any drawings, specifications, or confidential information related to the "Lazy |

| | |
|---|---|
| | S" designs. |
| | (Amended Complaint at ¶¶ 152-153). |

As can be noted from the chart above, there are several causes of action with distinct claims and/or subclaims, only some of which arise out of or are related to the 2006 Agreement. Accordingly, for some claims, such as breach of contract, the distinct breaches alleged must be dealt with independently, and only some portions of those claims arise out of or are related to the 2006 Agreement.  Mainly, the Plaintiffs attempt to mix in claims that Classic misappropriated Shell's confidential information, including engineering drawings and specifications related to the "Lazy S" designs in 1999 or earlier, and then Classic used that information as the basis for the Premier S Patents applied for in 2000, as part of its arbitrable claims.

Furthermore, if the Court were to adopt the Recommendation without properly dividing these claims, the parties will be litigating the issues surrounding the "Lazy S" designs and Classic's Premier S Patents in both the arbitration and in this Court, as the patent law, non-commercial claims involve the identical operative facts and circumstances as the commercial claims in the chart above. It would be inefficient and a waste of resources to force the parties, and this Court and the arbitrator, to engage in duplicative proceedings.

In short, the claims listed in the chart above are independent from the 2006 Agreement, and do not require, as pled, that the 2006 Agreement even existed.  These claims should and must remain in this Court since they are part of the patent law claims and issues, including the claims related to the invalidity and unenforceability of Premier S Patents.  These claims, as pled, exist separate from the 2006 Agreement, and therefore present no questions in respect of the parties' rights and obligations under the 2006 Agreement, and accordingly are beyond the scope

of the arbitration clause. *See Norcom Electronics Corp. v. CIM USA, Inc.*, 104 F.Supp.2d 198, 203 (S.D.N.Y. 2000).

Based on the foregoing, the finding that all of the claims sought to be compelled fell within the arbitration clause should be set aside under a *de novo* standard of review.

10.     Classic generally objects to pages 23-36 of the Recommendation as the Court, since the 12(b)(1) motion should be granted, is divested of jurisdiction over those claims which the Magistrate Judge recommended compelling to arbitration.[21] Consequently, the Recommendation must be set aside and/or rendered invalid under a *de novo* standard of review since the Court does not have jurisdiction to compel the claims to arbitration.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Classic respectfully request that the Court sustain all objections to the Recommendation, set aside and/or reverse the Recommendation, and grant all other relief, legal or equitable, to which Classic is entitled.

---

[21] By granting the Rule 12(b)(1) Motion, this Court will be divested of jurisdiction over the remaining state law claims since the sole basis for Federal jurisdiction over the remaining claims was supplemental jurisdiction. *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000); *Hyrdril Co. v. Grant Prideco, L.P.*, Civil Action No. H-05-0337, 2007 WL 1791663, at *8 (S.D. Tex. June 19, 2007); and *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2nd Cir. 1996).

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By: /s/ Jeffrey S. Lowenstein

    JEFFREY S. LOWENSTEIN
    State Bar No. 24007574
    Southern District No. 566897
    KAREN L. HART
    State Bar No. 24032401
    Southern District No. 35228
    NEAL J. SUIT
    State Bar No. 24041988
    Southern District No. 619893
    jeffl@bellnunnally.com
    karenh@bellnunnally.com
    neals@bellnunnally.com

3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204
(214) 740-1400 – Telephone
(214) 740-1499 – Facsimile

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2008, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to all counsel of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Jeffrey S. Lowenstein
Jeffrey S. Lowenstein

445511_2.DOC